396 So.2d 172 (1981)
In re CERTIFICATE OF JUDICIAL MANPOWER FOR DISTRICT COURTS OF APPEAL, CIRCUIT COURTS AND COUNTY COURTS, AS REQUIRED BY ARTICLE V, SECTION 9, FLORIDA CONSTITUTION.
No. 60359.
Supreme Court of Florida.
March 13, 1981.
PER CURIAM.
Article V, Section 9 of the Florida Constitution provides:
If the Supreme Court finds that a need exists for increasing ... the number of judges ... it shall, prior to the next regular session of the Legislature, certify to the Legislature its findings and recommendations concerning such need.
For the reasons set forth below, this Court has determined a need for the following new judicial positions, effective August 1, 1981, for the continued, effective operation of the courts of this State.

*173
 District Circuit County
 Court Court Court 
 Second Appellate District 1
 Third Appellate District 1
 Fourth Appellate District 1
 Sixth Judicial Circuit 1
 Seventh Judicial Circuit 1 1 (Volusia)
 Eighth Judicial Circuit 1
 Ninth Judicial Circuit 1
 Tenth Judicial Circuit 1
 Eleventh Judicial Circuit 4 1 (Dade)
 Twelfth Judicial Circuit 1 1 (Sarasota)
 Thirteenth Judicial Circuit 2 (Hillsborough)
 Fifteenth Judicial Circuit 1 1 (Palm Beach)
 Seventeenth Judicial Circuit 2 2 (Broward)
 Nineteenth Judicial Circuit 1
 Twentieth Judicial Circuit 1 1 (Lee)
 ________ _______ ____
 TOTALS 3 15 9

This Court is cognizant of the Legislature's desire to approach the budgeting process on a biennial basis. For this reason, the Court has identified clear needs which will exist in Fiscal Year 1982-1983, and based upon information currently available, certifies that there will be the need for at least the following new judicial positions, effective July 1, 1982, for the continued, effective operation of the courts of this State.

 District Circuit County
 Court Court Court 
 Sixth Judicial Circuit 1
 Fifteenth Judicial Circuit 1
 Seventeenth Judicial Circuit 2
 Twentieth Judicial Circuit 1
 ________ _______ ______
 TOTALS 0 5 0

The Court wishes to note a number of factors which could result in the need to later certify certain additional judgeships for the second year of the biennium:
(1) While we do not certify the need for an additional permanent judgeship for the First Appellate District in Fiscal Year 1981-1982, we recommend that the Legislature continue to make available one retired judge throughout the first year of the biennium and appropriate sufficient funds for this purpose in addition to the amounts already being requested for retired judges' compensation. As we pointed out in last year's certification, the Court feels there is a need to confirm the recent increase in filings over a longer period of time before concluding that this is a permanent condition. Although the First District continues to have the largest number of pending cases, this may still be due to the large number of cases transferred from the Industrial Relations Commission in 1979, and may abate with time. We will continue to observe the rate of new filings occurring in the First District and may find it necessary to certify the need for an additional permanent judgeship in the second year of the biennium, especially if the so-called TRIM bill (Chapter 80-274, Laws of Florida) begins to have an impact on the Court's caseload.
(2) The First Judicial Circuit has found it necessary to make extensive use of retired *174 judges over the past year. Their total usage during calendar year 1980 was 278 judge days, second only to the Seventeenth Circuit's total of 351 judge days. While the filing per judge ratio alone in the First Circuit does not justify a certification of need at this time, the Court is aware of the extensive travel demands which occur in large rural circuits such as the First and which adversely affect the judgetime available for handling a normal caseload. The Court will monitor the First Circuit's use of retired judges to determine if it continues during the first year of the biennium to a degree which will demonstrate the need for an additional permanent judge for Fiscal Year 1982-1983.
(3) While caseload statistics and other observable factors do not at this time justify a certification of need for the Second Judicial Circuit, the anticipated impact of the so-called TRIM bill (Chapter 80-274, Laws of Florida) may necessitate a certification in the second year of the biennium. The Legislature recognized the possibility of an adverse effect on the Second Circuit when it passed the TRIM bill by funding an additional judicial position in that legislation, conditioned on Supreme Court certification. See Section 16, Chapter 80-274, Laws of Florida. Attempts to estimate the number of such proceedings which may eventuate have been unavailing so far. Hence the Court would prefer to observe the actual impact of this legislation before making this certification.
(4) Furthermore, pursuant to Article V, Section 9, Florida Constitution, which requires the Court to make an annual certification of judicial need to the Legislature, the Court must reserve the right to exercise its responsibility to later certify additional judgeships for the second year of the biennium in the event facts not now known become apparent which would make such action essential.
The process by which the Court determined the need for these additional judgeships began in the fall, 1980, with the distribution of caseload and population statistics to the Chief Judge in each District Court of Appeal as well as each of the State's twenty Judicial Circuits. Based upon that data and the needs which were perceived within each District and Circuit to meet their constitutional directive of providing all persons in Florida with equal access to the courts without delay, the Chief Judges submitted to the Court their recommendations for new judicial manpower. For the first year of the biennium (Fiscal Year 1981-1982), the Chief Judges asked that the Court consider four additional District Court judges, twenty new Circuit Court judges and twelve new County Court judgeships. For the second year of the biennium (Fiscal Year 1982-1983), the Chief Judges requested that the Court consider four additional District Court judges, twelve new Circuit judgeships and six additional County Court judges.
During December, 1980 and January, 1981, the Chief Justice and State Courts Administrator traveled to those sixteen circuits requesting new judgeships in order to evaluate their requests. Participating in these meetings were state attorneys, public defenders, county commissioners and other local officials, local Bar representatives, and legislative members and staff, in addition to judicial officers and personnel. At the same time, additional statistical data was gathered and analyzed.
Following the Chief Justice's visits and analysis, the Court considered the requests of the Districts and Circuits, and the views of the Chief Justice on their needs. There were several criteria used by the Court in this process, including:
1. Caseload statistics, known and projected
2. Growth, nature and projections of population
3. Number of attorneys
4. Use and availability of retired judges
5. Presence of non-lawyer judges
6. Geographic size of the circuit
7. Presence of state facilities
8. Law enforcement activities and policies, including any substantial commitment *175 of additional resources for state attorneys and public defenders
9. Time since the last new judgeship was authorized
10. Complexity of cases
11. Prior certifications which were not authorized.
The process of certifying the need for additional judgeships over the next biennium is not a process by which need can be objectively quantified through the use of a simple equation. Unforeseen developments have an impact upon the judiciary of this State and result in needs which cannot be foreseen, such as occurred with the refugee influx in South Florida recently. The above criteria are considered by the Court in this process, but are not weighted in relation to each other, nor are they compressed into a mathematical formula which will predict with certainty the needs of the judiciary.
It will be noted that the Court's recommendation certifies to the Legislature nine fewer judicial positions in the first year, and seventeen fewer judicial positions in the second year of the biennium than have been requested by the District and Circuit Courts. Thus, over the biennium, the Court's recommendation of thirty-two new judgeships is a total of twenty-six new judgeships fewer than have been requested by the District and Circuit Courts.

FINDINGS

DISTRICT COURTS OF APPEAL
The Court has reviewed the requests of the Appellate Districts on the basis of standards recommended by the Appellate Court Structure Commission in 1979. As noted in the certification order filed April 2, 1979, the Florida Appellate Court Structure Commission composed of judges, lawyers, laymen and legislators concluded that to be effective and produce quality decisions, appellate judges should be principally responsible for review of not more than 250 cases, annually. See, In re: Certificate of Judicial Manpower for Circuit and County Courts as Required by Article V, Section 9, Florida Constitution, 370 So.2d 363 (Fla. 1979). That caseload objective was taken into consideration by the Court in its certification orders for 1979 and 1980. Although these certifications were consciously short of the articulated caseload standard, nonetheless, attainment of that standard has remained the goal for the appellate judiciary of this state. Of course, the objective is accentuated for the district courts of appeal by virtue of the passage of the recent constitutional amendment limiting the jurisdiction of the Supreme Court which accords true finality to district court decisions without statewide precedential effect. While this certification still does not achieve the desired standard it, nevertheless, moves us closer to the stated goal.
Second Appellate District. The Second District currently has eight judges. The need for an additional judge in the first year of the biennium is certified.
Some of the dominant factors upon which this certification is based are that the Second District has the highest total population as well as the highest population per judge of any of the Appellate Districts. See, In re Advisory Opinion to Governor, 374 So.2d 959, 968 (Fla. 1979), (Overton, J., concurring). Case filings now existing and as projected justify the need for an additional judge so as to approach the standard 250 cases per judge adopted by this Court.
Third Appellate District. Currently, the Third District Court of Appeal has eight judges, and the need for one additional judge is certified for the first year of the biennium.
In 1979, two new judges were certified, but only one was authorized. The need for the second judge certified in 1979 has not abated, but has increased. In addition, the dominant factors considered by the Court in certifying this need are the high number of filings and projected filings for the Third District, as well as their increasing number of cases pending at the end of calendar year 1980 over those pending at the end of calendar year 1979. The Court feels that the need for this additional judge is evident in *176 the first year of the biennium, although the Third District Court of Appeal did not request an additional judge until the second year of the biennium.
Fourth Appellate District. Currently, the Fourth District Court of Appeal has eight judges and the need for one additional judge in the first year of the biennium is certified.
The dominant factors considered by the Court in certifying this need are the high number of pending cases at the end of the last several calendar years, the growing population in the area, and the high caseload per judge which, based upon the Court's accepted standard of 250 cases per judge, justifies the need for this additional judgeship.

CIRCUIT AND COUNTY COURTS
Apart from pure statistical data relating to case filings in the following circuits which were considered by the Court, we set forth below the paramount considerations prompting our certification for the respective judicial circuits.
Sixth Judicial Circuit (Pinellas and Pasco Counties). There are currently twenty-six Circuit and thirteen County Court judges in the Sixth Circuit. The need for one additional Circuit judge in each year of the biennium is certified. The dominant factors considered by the Court in certifying this need are that the Circuit ranks fifth in population per judge and eighth in combined rankings of filings, attorneys and population per judge ratios, the recent growth in northern Pinellas and Pasco Counties and the projected 34.3 percent growth between 1975 and 1985. Furthermore the anticipated opening of a new criminal justice complex in mid-Pinellas County in the early part of calendar year 1982 will affect the scheduling of cases and will require more judge travel time to effectively service the civil and criminal dockets if an additional judge is not authorized in the second year of the biennium.
Seventh Judicial Circuit (Volusia, Flagler, St. Johns and Putnam Counties). Currently, the Seventh Circuit has twelve Circuit and eight County Court judges. The need for one Circuit and one County Court judge in Volusia County is certified in the first year of the biennium.
The dominant factors considered by the Court in this certification are that the Circuit ranked third in filings per Circuit judge during 1980, the burgeoning arrest rate in Volusia County according to the Department of Law Enforcement's 1979 Annual Report, the nature of the population including a very high transient and tourist population as well as the projected population increase of 33.9 percent from 1975 to 1985, and the regular use of County Court judges on the Circuit bench.
The highest filing per County Court judge ratio in the State is found in Volusia County.
Eighth Judicial Circuit (Alachua, Union, Bradford, Baker, Gilchrist and Levy Counties). There are currently seven Circuit and nine County Court judges in the Eighth Circuit, and the need for one additional Circuit judge in the first year of the biennium is certified.
The dominant factors considered by the Court are the geographic size of the Circuit which consists of six counties and which results in considerable travel time, the fact that seven major correctional facilities as well as other state facilities are located in the Circuit, and the extensive use of County Court judges on the Circuit bench which includes one being used full time as a circuit judge for the past year. However, increased county court caseloads preclude continued use of this judge on the circuit bench. In addition, the public defender in the Eighth Judicial Circuit has reported a dramatic increase in felony and juvenile cases compared with last year which resulted in his request for a moratorium on new assignments.
Ninth Judicial Circuit (Orange and Osceola Counties). There are currently seventeen Circuit and twelve County Court judges in the Ninth Circuit. The need for one additional Circuit judge is certified in the first year of the biennium.
*177 The dominant factors considered by the Court are the fact that the Circuit ranks third in the ratio of attorneys per judge, the nature of the population including a high number of tourists and commuters, the need for an additional judge in the Civil Division which has not had a new judge since 1972, and the substantial planned development associated with both the public and private sector in the Circuit.
Tenth Judicial Circuit (Polk, Highlands and Hardee Counties). There are currently twelve Circuit and eight County Court judges in the Tenth Circuit, and the need for one additional Circuit judge in the first year of the biennium is certified.
The dominant factors considered in this certification are the policies of the state attorney which appear to be resulting in more jury trials due to an extensive no plea bargaining policy, the high number of complex drug and organized crime cases being reported in the Circuit, as well as the considerable travel time involved in the Circuit. In addition, the Circuit ranks fourth in its filing per judge ratio, and two of its County Court judges are non-lawyers.
Eleventh Judicial Circuit (Dade County). The Eleventh Circuit currently has fifty-one Circuit and thirty-one County Court judges. The need for four Circuit judges and one County Court judge for Dade County is certified in the first year of the biennium.
Since 1972, only five Circuit judgeships have been authorized. During the same period of time, eight new County Court judges were authorized. There is an expectation that Dade County and the City of Miami will hire a total of an additional 400 law enforcement officers in the next year and that this, along with the impact of minimum-mandatory sentencing laws, will result in more cases being filed, as well as an increase in the number of jury trials.
Ten branch courthouses are being operated in the Circuit which has a total of twenty-six municipalities. First appearance hearings are now held twice a day, seven days a week, and will soon have to be held three times a day.
Additional considerations are the sizable request for additional personnel for the state attorney in the next biennium, the high number of attorneys per judge in the Circuit, which ranks second in the State in this category, the highest number of total filings in the State, and the significant tourist and immigrant population which is affecting judicial caseload.
The additional County Court judge is necessary due to the total caseload being experienced in the County courts which is the largest of any county in the State in all fining categories, and which ranks fourteenth in the State in filing per judge ratio.
Twelfth Judicial Circuit (Sarasota, Manatee and DeSoto Counties). The Twelfth Circuit currently has nine Circuit and six County Court judges. The need for one Circuit and one County Court judge in Sarasota County is certified.
The dominant factors considered by the Court are that the Circuit has had only one Circuit judgeship authorized since 1972, the fact that the Circuit ranks second in population per Circuit judge, and ranks first in the State in combined ratios of filings, attorneys and population per Circuit judge. The population of the Circuit is projected to increase 43.1 percent between 1975 and 1985. Sarasota County ranks fifth in its ratio of total filings per County Court judge.
Thirteenth Judicial Circuit (Hillsborough County). The Thirteenth Circuit currently has twenty-four Circuit and nine County Court judges. The need for two additional County Court judges is certified in the first year of the biennium.
The dominant factors considered by the Court are that the County has had no new County Court judgeships since 1973, the very high population per County Court judge in Hillsborough County compared with other counties in the State, and that Hillsborough County ranks second in the State in filings per County Court judge.
Fifteenth Judicial Circuit (Palm Beach County). Currently, the Fifteenth Circuit *178 has eighteen Circuit and nine County Court judges. In the first year of the biennium, the need for one Circuit and one County Court judge for Palm Beach County is certified and, in the second year of the biennium, the need for an additional Circuit judge is certified.
The dominant factors considered by the Court are that County Court judges have served on the Circuit bench over the past year an average of 1.7 circuit judge years, delays of from eight to twelve months are occurring before a trial can be held after a motion to set a case for trial is filed, the projected 51 percent increase in population between 1975 and 1985, and the dramatic increase in the number of attorneys since 1972. In addition, the state attorney has requested a significant increase in staff over the next biennium.
In 1980, a County Court judgeship was certified, but was not authorized and, since that time, county filings have increased. Palm Beach County ranks third in the State in its ratio of filings per County Court judge.
Seventeenth Judicial Circuit (Broward County). Currently, the Seventeenth Circuit has thirty-six Circuit and fifteen County Court judges. In the first year of the biennium, the need for two Circuit and two County Court judges for Broward County is certified and, in the second year of the biennium, the need for two additional Circuit judges is certified.
There has been a 64 percent increase in population since 1970 from about 600,000 to approximately one million in 1980, and projected growth between 1975 and 1985 is estimated to be 34.4 percent. There is also a very large tourist and transient population, resulting in a population which may be characterized as non-static. In addition to these factors, other factors considered by the Court are that the Circuit ranks eighth in filings per Circuit judge and that the Circuit ranks second in total filings, the second highest total number of attorneys of any Circuit in the state, the very high juvenile caseload due to a large number of runaways who arrive in the Fort Lauderdale area, and current delays of from one year to eighteen months which are being experienced in obtaining a trial date.
In 1980 two County Court judgeships were certified but not authorized and the need perceived at that time has not decreased. The County also ranks seventh in the State in filings per County Court judge.
Nineteenth Judicial Circuit (Martin, St. Lucie, Indian River and Okeechobee Counties). The Nineteenth Circuit currently has seven Circuit and six County Court judges. The need for one Circuit judge in the first year of the biennium is certified.
The dominant factors considered by the Court are the size of the Circuit which requires extensive travel, a projected 53.8 percent population growth between 1975 and 1985, an increase which is being experienced in complex drug cases as well as the significant increase in staff which the state attorney is requesting over the next biennium. One circuit judgeship was certified in 1980 but not authorized and since that time the need for this additional judge has increased.
Twentieth Judicial Circuit (Collier, Lee, Hendry, Glades and Charlotte Counties). Currently, there are nine Circuit and eight County Court judges in the Twentieth Circuit. One additional Circuit and one additional County Court judgeship for Lee County are certified in the first year of the biennium. In the second year of the biennium, an additional circuit judgeship is certified.
The dominant factors considered by the Court are the very large geographical area of the Circuit which includes five large counties, its very long and undeveloped coastline, the dramatic increase in complex drug cases which is being experienced, the significant increase in resources requested by the state attorney, the highest population per Circuit judge in the State, the fact that it ranks third in combined ratios of filings, attorneys and population per Circuit judge, and the projected 68.9 percent increase in population between 1975 and 1985 in the Circuit, which is the highest in the *179 State. In addition, the number of attorneys in the Circuit has more than doubled since 1972.
Lee County has the third highest number of jury trials in the State and the last County Court judgeship authorized was in 1975. The filing per County Court judge ratio in Lee County ranks sixth in the State.

CERTIFICATION
Therefore, in accordance with Article V, Section 9, Florida Constitution, we certify the need for the additional District, Circuit and County Court judgeships indicated above. This Court certifies that these judicial officers are necessary and we recommend that they be made permanent by law and funded by the State. In addition this Court recommends that the Legislature make available to the First Appellate District one retired judge for Fiscal Year 1981-1982, with sufficient resources specifically for this purpose.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ENGLAND, ALDERMAN and McDONALD, JJ., concur.