PER CURIAM.
The Rules of Judicial Administration Committee of The Florida Bar (Rules Committee) and the Commission on District’ Court of Appeal Performance and Accountability (the Commission) have filed a joint recommendation seeking amendments to Florida Rule of Judicial Administration 2.035, Determination of Need for Additional Judges, to update the caseload threshold standard and other certification criteria used for assessing the need for district court judges.[1] The proposed amendments were published for comment, but no comments were received.
Rule of Judicial Administration 2.035 sets forth uniform criteria for determining the need for increasing or decreasing the number of trial and district court judges and the procedures for certifying the Court’s findings and recommendations in this regard to the Legislature in accordance with article V, section 9 of the Florida Constitution. In August 2002, Chief Justice Anstead established the Commission on District Court of Appeal Performance and Acpountability (the Commission). See In re Commission on District Court of Appeal Performance and Accountability, Fla. Sup.Ct Admin. Order No. AOSC02-25 (Aug. 30, 2002) (on file with Clerk, Fla. Sup.Ct.). The Commission was charged with, among other things, making recommendations -for certification of need for additional district, court judges. In response to this .charge,,, the Commission made recommendations to the Rules . Committee for an amendment . to rule 2.035(b)(2) regarding the certification criteria to be used for assessing the need for additional .district court judges. The Rules Committee unanimously approved the proposed amendments as contained in the joint recommendation before the Court in this casé. After reviewing the joint recommendation, we amend rule 2.035 as discussed'below.
Subdivision (b)(2)(A) is amended to increase the caseload threshold standard for assessing the need for additional appellate court judges from a primary caseload of 250 filings per judge to a primary caseload of 350 filings per judge. According to the Commission and the Rules Committee, the caseload threshold for district court judges has not been amended in over twenty years, and the five district courts of appeal are all operating at caseloads significantly in excess of the 250 filings per judge standard currently contained in the rule. According to the Commission, this forty percent increase to 350 case filings per judge more accurately reflects the current filings per judge ratio in the district courts of appeal.[2] We adopt the proposed 350 filings per judge caseload threshold, while a *615 continuing study of the caseload is being completed.[3] We also add a Court Commentary to the rule to annotate the amendments.
Subdivision (b)(2)(B) currently provides for consideration of “any other factors deemed relevant” to the determination of the need for additional appellate judges, including the factors considered in determining the need for trial judges under subdivision (b)(1). We adopt the proposed amendment to this subdivision which provides a list of factors that more accurately relate to the judicial workload in the district courts.
Accordingly, we adopt the proposed amendments to Rule of Judicial Administration 2.035 as set forth in the appendix to this opinion. Additions are indicated by underscoring; deletions are indicated by struck-through type. The commentary is offered for explanation only and is not adopted as an official part of the rules. The amendments shall become effective immediately upon the release- of this opinion.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
APPENDIX
RULE 2.035. DETERMINATION OF NEED FOR ADDITIONAL JUDGES
(a) Statement of Purpose. The purpose of this rule is to set forth uniform criteria used by the supreme court in determining the need for additional judges, except supreme court justices, and the necessity for decreasing the number of judges, and for increasing, decreasing, or redefining appellate districts and judicial circuits, pursuant to article V, section 9, Florida Constitution. The criteria set forth in this rule have been identified and used by the supreme court in making this determination in recent years. These criteria form the primary basis for our determination of need for additional judges. Unforeseen developments, however, may have an impact upon the judiciary resulting in needs which cannot be foreseen or predicted by statistical projections. This court, therefore, may also consider any additional information found by it to be relevant to the process. In establishing criteria for the need for additional appellate court judges, substantial reliance has been placed on the findings and recommendations of the Supreme Court Com *616 mission on Florida Appellate Court Structure. See In re Certification, 370 So.2d 365 (Fla.1979).
(b) Criteria.
(1) Trial Courts.
(A) The following thresholds have been established based upon caseload statistics supplied to the state courts administrator by the clerks of the circuit courts. Courts either at or projected to be at the thresholds are presumed to have a need for one or more additional judges. The thresholds are not an optimal level but reflect that the courts are operating above capacity.
(i)The circuit court threshold is 1,865 case filings per circuit judgé. Thesé case filings include circuit criminal (includes worthless checks), civil (includes habeas corpus), juvenile dependency and delinquency, domestic relations (including child support), probate, guardianship, and mental health cases.
(ii) - The county court threshold is 6,114 ease filings per county judge. These case' filings include criminal misdemeanor, county civil (including small claims and landlord-tenant), violations of county or municipal ordinances, DUI, and other criminal traffic cases; they do not include worthless check cases.
(B) Other factors may be utilized in the determination of the need for one or more additional judges. These other factors may indicate that need for an additional judge(s) even though a court may not have achieved the presumptive threshold. Conversely, the absence of these other factors may mitigate the need for one or more additional judges. These other factors include:
(i) County judge availability to serve and county judge service in circuit court.
(ii) The use and availability of senior judges to serve on a particular court.
(iii) The availability and use of supplemental hearing officers.
(iv) The extent of use of alternative dispute resolution.
(v) The number of jury trials.
(vi) Foreign language interpretations.
(vii) The geographic size of a circuit, including travel times between courthouses in a particular jurisdiction.
(viii) Law enforcement activities in the court’s jurisdiction, including any substantial commitment of additional resources for state attorneys, public defenders, and local law enforcement.
(ix) The availability and use of case-related support staff and case management policies and practices.
(x) The nature and complexity of cases coming before the courts in the jurisdiction.
(xi) Caseload trends.
(2) District Courts of Appeal.
(A) Caseload- statistfesThe following threshold has been established based upon datacaseload statistics supplied to the state courts administrator by the clerks of the district courts of appeal. The court will presume that there is a need for an additional appellate court judgeship in any district for which a request is made and where current caseload filings reflect the need for an additional judge *617 ship based on a primary caseload of 250350 filings per judge.
(B) Any other factor deemed relevant by the court may be utilized in the determination of the need for one or more additional judges, including, but not limited to, thosethe following factors llsled-in-(b)(l) for trial courts.::
(i) number and percent of pro se and other cases impacting extraordinarily on workload;
(ii) caseload trends;
(iii) use of assigned or senior judges;
(iv) number of law clerks, staff attorneys and judicial assistants available to support judges;
(v) use of administrative measures to reduce delay and pending caseload (i.e., accelerated calendar, frequency of court days, dispute resolution programs, case management policies, etc.);
(vi) number of trial judges per appellate judge;
(vii) geographic size of appellate district (i.e., number of counties, number of days court is held in other counties, travel time);
(viii) population growth and density within district;
(ix) number of attorneys in district;
(x) presence of state and local government institutions in district;
(xi) characteristics of district (i.e., urban v. rural);
(xii) new laws, events, or litigation impacting caseload or administrative workload;
(c) Additional Workload Factors. Because summary statistics reflective of the above criteria do not fully measure judicial workload, the supreme court will receive and consider, among other things, information about the time to perform and volume of the following activities, which also comprise the judicial workload of a particular jurisdiction:
(1) review appellate court decisions;
(2) research legal issues;
(3) review briefs and memoranda of law;
(4) participate in court conferences on pending cases;
(5) hear and dispose of motions;
(6) prepare correspondence, orders, judgments, and decisional opinions;
(7) review presentence investigative reports and predispositional reports in delinquency and dependency cases;
(8) review petitions and motions for post-conviction relief;
(9) perform administrative duties relating to the court;
(10) participate in meetings with those involved in the justice system; and
(11) participate in educational programs designed to increase the competency and efficiency of the judiciary.
(d) Certification Process. In order to gather information about these criteria and additional workload factors, the state courts administrator will distribute a compilation of summary statistics and projections to each chief judge at a time designated by the chief' justice. Each chief judge will then consider these criteria, additional workload factors, and summary statistics, and submit to the chief justice a request for any increases or decreases under article V, section 9, of the Florida Constitution that the chief judge feels are required. The chief justice and the state courts administrator may then visit the chief judge and other representatives of the court submitting the request as well as *618 representatives of The Florida Bar and the public to gather additional information and clarification about the need in the particular jurisdiction. The chief justice will submit recommendations to the supreme court, which will thereafter certify to the legislature its findings and recommendations concerning such need.'
Court Commentary
1983 Adoption. Article V, section 9, of the Florida Constitution authorizes the establishment, by rule, of uniform criteria for the determination of the need for additional judges, except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing, or redefining appellate districts and judicial circuits. Each year since the adoption of article V in 1972, this court, pursuant to section 9, has certified its determination of need to the legislature based upon factors and criteria set forth in our certification decisions. This rule is intended to set forth criteria and workload factors previously developed, adopted, and used in this certification process, as summarized and specifically set forth in In re Certificate of Judicial Manpower, 428 So.2d 229 (Fla.1983); In re Certificate of Judicial Manpower, 396 So.2d 172 (Fla.1981); and In re Certification, 370 So.2d 365 (Fla.1979).
2004 Amendment. Subdivision (b)(2) was amended to provide more specific criteria and workload factors to be used in determining the need for increasing or decreasing the number of judges on the District Courts of Appeal. In addition, the caseload level at which the court -will presume that there is a need for an additional appellate judge has been increased from 250 to 350 filings per judge. .

. We have jurisdiction. See art. V, § 2(a), Fla. Const.

. At the suggestion of the Commission, the Court recently applied this increased caseload *615 standard, although not yet formally adopted, in making the certification of need for additional appellate judges. See In re Certification of Need for Additional Judges, 863 So.2d 1191, 1201 (Fla.2003). As noted in the certification opinion, in fiscal year 2002-2003, there was a statewide average for the district courts of appeal of approximately 389 case filings per judge. See Id. at 1200-1201(recognizing the steady increase in district court of appeal workload over the past ten years).

. Chief Justice Pariente has directed the Commission on District Court Performance and Accountability to specifically reexamine whether the 350 filings per judge threshold accurately reflects a basis for certifying the need for additional district court judges. See In re Commission on District Court of Appeal Performance and Accountability, Fla. Sup.Ct. Amended Admin. Order No. AOSC04-21 (Sept. 22, 2004) (on file with Clerk, Fla. Sup. Ct.). These issues are intertwined with the question of the need, if any, for additional district courts of appeal. Chief Justice Par-iente has further established the Committee on District Court of Appeal Workload and Jurisdiction to make recommendations on uniform criteria as a primary basis for a determination of the need to increase, decrease, or redefine the appellate districts. See In re Committee on District Court of Appeal Workload and Jurisdiction, Fla. Sup.Ct. Admin. Order No. AOSC04-122 (Sept. 22, 2004) (on file with Clerk, Fla. Sup.Ct.).