933 So.2d 1136 (2006)
In re REPORT OF THE COMMISSION ON DISTRICT COURT OF APPEAL PERFORMANCE AND ACCOUNTABILITY-RULE OF JUDICIAL ADMINISTRATION 2.035.
No. SC06-397.
Supreme Court of Florida.
July 6, 2006.
The Honorable Martha C. Warner, Chair, Commission on District Court of Appeal Performance and Accountability, West Palm Beach, FL, Gary Devenow Fox, Chair, Rules of Judicial Administration Committee, Tampa, FL, and John F. Harkness, Jr., Executive Director, The *1137 Florida Bar, Tallahassee, FL, for Proponents.
PARIENTE, J.
The Commission on District Court of Appeal Performance and Accountability (Commission) has filed a report recommending amendments to Florida Rule of Judicial Administration 2.035, Determination of Need for Additional Judges, to update the criteria for certification of need for district court of appeal judges.[1] We have jurisdiction. See art. V, § 9, Fla. Const.
In 2004, we amended the caseload threshold for assessing the need for additional district court judges set forth in rule 2.035 from 250 to 350 case filings per judge, noting that the "the caseload threshold for district court judges has not been amended in over twenty years, and the five district courts of appeal are all operating at caseloads significantly in excess of the 250 filings per judge standard currently contained in the rule." Amendment to the Fla. Rules of Judicial Admin. (Certification of Judges), 888 So.2d 614, 614 (Fla.2004). At that time, we observed that the figure of 350 case filings per judge "more accurately reflects the current filings per judge ratio in the district courts of appeal." Id. We provisionally adopted the proposed 350 filings per judge caseload threshold, while continuing to study whether the criterion of case filings per judge was the most accurate method for determining whether to certify the need for an additional judge for the district courts of appeal. See id. at 614-15.
By administrative order dated September 22, 2004, the Court directed the Commission to "propose a process and criteria for determining the resource needs and deployment patterns sufficient to address the workload of the district courts of appeal, including a re-examination of whether the 350-filings-per-judge threshold accurately reflects a basis for certifying the need for additional district court of appeal judges." In re Commission on District Court of Appeal Performance and Accountability, Fla. Admin. Order No. AOSC04-21 (Sept. 22, 2004) (on file with Clerk, Fla. Sup.Ct.); see also In re Certification of Need for Additional Judges, 889 So.2d 734, 742 (Fla.2004) (questioning "whether the 350-filings-per-judge threshold accurately reflects a basis for certifying the need for additional district court of appeal judges").
In its initial report, the Commission outlined a proposed amendment to rule 2.035 that identified multiple relevant criteria for assessing the need for additional district court judges, including a mechanism for measuring "weighted caseload per judge." As we explained,
the Commission developed a process for establishing relative case weights. This process measures judicial effort associated with any given caseload. Relative weights were established only for those cases disposed of by a judge "on the merits," and not cases dismissed by the clerk of court or otherwise administratively disposed of. The Commission first established categories of similar *1138 cases and ranked them to identify a mid-ranked case. Then, judges from each district were asked to approximate the relative weight of each case category in relation to the mid-ranked case, identified as an appeal from a criminal judgment and sentence. Relative weights were then assigned to each type of case, ranging from an appeal from a final judgment in a civil case to a criminal appeal in a case disposed of pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). These weights were then applied to each court's dispositions on the merits to determine the weighted caseload value.
In re Certification of Need for Additional Judges, 918 So.2d 283, 288 (Fla.2005).[2]
The Court reviewed this initial report and agreed that weighted caseload per judge was a more meaningful measure of workload. We noted, however, that the Commission's report did not identify a threshold point at which the weighted caseload value would be sufficient to warrant a recommendation to certify the need for an additional judge. Accordingly, the Court requested that the Commission review the appropriate data, analyze the workload implications, and provide the Court with a threshold target or range that could be used to guide the certification process.
On January 31, 2006, the Commission submitted a second report which recommended an amendment to rule 2.035 revising the current process and criteria for certification of need for district court of appeal judges and identifying a specific weighted caseload per judge threshold. Upon review of the Commission's recommendations, we amend rule 2.035 as discussed below.
Subdivision (a), Statement of Purpose, is amended to delete the wording indicating that the rule sets forth criteria to be used in determining the need for increasing, decreasing, or redefining appellate districts and judicial circuits. The rule does not actually set forth criteria for increasing, decreasing, or redefining judicial circuits. Additionally, recently adopted Florida Rule of Judicial Administration 2.036 separately sets forth the criteria for determining the need for increasing, decreasing, or redefining appellate districts. See In re Report of the Comm. on Dist. Court of Appeal Workload and Jurisdiction-Rule of Judicial Admin. 2.036, 921 So.2d 615 (Fla.2006). Subdivision (a) is also amended to refer to the Commission's report and the opinion of the Court in this case.
Current subdivisions (b)(2)(A) and (B) are replaced with the Commission's newly proposed criteria and weighted caseload per judge threshold. As we explained in our most recent opinion certifying a need for additional judges:
[T]he Commission found that many of the criteria in rule 2.035(b)(2) are not accurate measures or reliable predictors of judicial workload. In fact, factors such as population growth and an increase in the number of circuit court judges did not correlate with an increase in appellate workload. In the place of the prior criteria, the Commission formulated new criteria grouped into four categories: workload, efficiency in case disposition, judicial effectiveness in deciding cases and performing administrative duties, and judicial professionalism in enhancing the quality of the courts, the legal profession, and the justice system as a whole.
*1139 In re Certification of Need for Additional Judges, 918 So.2d at 288 (footnote omitted).
The Commission also advised against using a strict case filings per judge number to determine the need for additional judges. We agreed that
[t]he weighted caseload is a more accurate representation of judicial workload in that it addresses differences in the amount of judicial time that must be spent on each type of case. Relative case weights are useful in many ways. First, they demonstrate how a court's judicial workload has increased or decreased over time. Second, they allow a comparative assessment of the distribution of judicial workload between districts. Lastly, they contribute to an analysis of how the use of other nonjudicial resources can affect judicial workload.
Id. at 289. Under the new weighted caseload per judge threshold set forth in rule 2.035(b)(2)(B), "[t]he court will presume that there is a need for additional appellate court judgeships in any district for which a request is made and where the relative weight of the cases disposed on the merits per judge would have exceeded" the threshold of the weighted caseload after the addition of the proposed judge.[3]
We emphasize that, although the threshold of the weighted caseload establishes a presumption for an additional judge, this Court will continue to examine many factors in determining when an additional judge is needed, including the multiple factors listed in amended rule 2.035(b)(2)(A)(i)-(iv). Under the amended process set forth in subdivision (d), Certification Process, after the chief judge of a district court has prepared a report showing the need for a new judge, the report must then be submitted to the District Court of Appeal Budget Commission for review and approval. The report and the Budget Commission's approval must then be submitted to the Chief Justice. The Chief Justice will submit the recommendations to the Court, which will thereafter certify its findings and recommendations to the Legislature.[4]
Accordingly, we adopt the proposed amendments to Rule of Judicial Administration 2.035 as set forth in Appendix 1 to this opinion. Additions are indicated by underscoring; deletions are indicated by struck-through type. The commentary is offered for explanation only and is not adopted as an official part of the rule. The amendments shall become effective immediately upon the release of this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.

APPENDIX 1

RULE 2.035. DETERMINATION OF NEED FOR ADDITIONAL JUDGES
(a) Statement of Purpose. The purpose of this rule is to set forth uniform criteria used by the supreme court in determining the need for additional judges, except supreme court justices, and the necessity for decreasing the number of judges, and for increasing, decreasing, or redefining appellate districts and judicial *1140 circuits, pursuant to article V, section 9, Florida Constitution. The criteria set forth in this rule have been identified and used by the supreme court in making this determination in recent years. These criteria form the primary basis for our the supreme court's determination of need for additional judges. Unforeseen developments, however, may have an impact upon the judiciary resulting in needs which cannot be foreseen or predicted by statistical projections. This The supreme court, therefore, may also consider any additional information found by it to be relevant to the process. In establishing criteria for the need for additional appellate court judges, substantial reliance has been placed on the findings and recommendations of the Supreme Court Commission on Florida Appellate Court Structure. See In re Certification, 370 So.2d 365 (Fla. 1979) Commission on District Court of Appeal Performance and Accountability. See In re Report of the Comm'n on Dist. Court of Appeal Performance and AccountabilityRule of Judicial Admin. 2.035, No. SC06-397 (Fla. July 6, 2006).
(b) Criteria.
(1) Trial Courts. [no change]
(2)District Courts of Appeal.
(A) The following threshold has been established based upon caseload statistics supplied to the state courts administrator by the clerks of the district courts of appeal. The court will presume that there is a need for an additional appellate court judgeship in any district for which a request is made and where current caseload filings reflect the need for an additional judgeship based on a primary caseload of 350 filings per judge.
(B) Any other factor deemed relevant by the court may be utilized in the determination of the need for one or more additional judges, including, but not limited to, the following factors:
(i) number and percent of pro se and other cases impacting extraordinarily on workload;
(ii) caseload trends;
(iii) use of assigned or senior judges;
(iv) number of law clerks, staff attorneys and judicial assistants available to support judges;
(v) use of administrative measures to reduce delay and pending caseload (i.e., accelerated calendar, frequency of court days, dispute resolution programs, case management policies, etc.);
(vi) number of trial judges per appellate judge;
(vii) geographic size of appellate district (i.e., number of counties, number of days court is held in other counties, travel time);
(viii) population growth and density within district;
(ix) number of attorneys in district;
(x) presence of state and local government institutions in district;
(xi) characteristics of district (i.e., urban v. rural);
(xii) new laws, events, or litigation impacting caseload or administrative workload;
(A) The criteria for determining the need to certify the need for increasing or decreasing the number of judges on a district court of appeal shall include the following factors:
(i) workload factors to be considered include: trends in case filings; trends in changes in case mix; trends in the backlog of cases ready for assignment and disposition; trends in the relative weight of cases disposed on the merits per judge; and changes in statutes, rules of court, and case law that directly or indirectly impact judicial workload.

*1141 (ii) efficiency factors to be considered include: a court's ability to stay current with its caseload, as indicated by measurements such as trend in clearance rate; trends in a court's percentage of cases disposed within the time standards set forth in the Rules of Judicial Administration and explanation/justification for cases not resolved within the time standards; and a court's utilization of resources, case management techniques and technologies to maximize the efficient adjudication of cases, research of legal issues, and preparation and distribution of decisions.
(iii) effectiveness factors to be considered include the extent to which each judge has adequate time to: thoroughly research legal issues, review briefs and memoranda of law, participate in court conferences on pending cases, hear and dispose of motions, and prepare correspondence, orders, judgments and opinions; expedite appropriate cases; prepare written opinions when warranted; develop, clarify, and maintain consistency in the law within that district; review all decisions rendered by the court; perform administrative duties relating to the court; and participate in the administration of the justice system through work in statewide committees.
(iv) professionalism factors to be considered include: the extent to which judges report that they have time to participate, including teaching, in education programs designed to increase the competency and efficiency of the judiciary and justice system as well as the competency of lawyers; provide guidance and instruction for the professional development of court support staff; and participate in appropriate activities of the legal profession at both the state and local levels to improve the relationship between the bench and bar, to enhance lawyer professionalism, and to improve the administration of justice.
(B) The court will presume that there is a need for an additional appellate court judgeship in any district for which a request is made and where the relative weight of cases disposed on the merits per judge would have exceeded 280 after application of the proposed additional judge(s).
(i) The relative weight of cases disposed on the merits shall be determined based upon case disposition statistics supplied to the state courts administrator by the clerks of the district courts of appeal, multiplied by the relative case weights established pursuant to subdivision (b)(2)(B)(ii), and divided by 100.
(ii) The Commission on District Court of Appeal Performance and Accountability shall review the workload trends of the district courts of appeal and consider adjustments in the relative case weights every four years.
(c) Additional Trial Court Workload Factors. Because summary statistics reflective of the above criteria do not fully measure judicial workload, the supreme court will receive and consider, among other things, information about the time to perform and volume of the following activities, which also comprise the judicial workload of a particular jurisdiction:
(1) review appellate court decisions;
(2) research legal issues;
(3) review briefs and memoranda of law;
(4) participate in court conferences on pending cases;
(5) hear and dispose of motions;
(6) prepare correspondence, orders, judgments, and decisional opinions;
(7) review presentence investigative reports and predispositional reports in delinquency and dependency cases;
*1142 (8) review petitions and motions for post-conviction relief;
(9) perform administrative duties relating to the court;
(10) participate in meetings with those involved in the justice system; and
(11) participate in educational programs designed to increase the competency and efficiency of the judiciary.
(d) Certification Process. The process by which certification of the need to increase or decrease the number of judges shall include:
(1) In order to gather information about these criteria and additional workload factors, t The state courts administrator will distribute a compilation of summary statistics and projections to each chief judge at a time designated by the chief justice.
(2) Each chief judge shall submit to the chief justice a request for any increase or decrease in the number of judges:
(A) Trial Courts. Each chief judge will then consider these criteria, additional workload factors, and summary statistics, and submit to the chief justice a request for any increases or decreases under article V, section 9, of the Florida Constitution that the chief judge feels are required.
(B) District Courts. Each chief judge will then consider the criteria of this rule and the summary statistics; if a new judge is requested, the chief judge shall prepare a report showing the need for a new judge based upon the application of the criteria in this rule.
(i) Any request for a new district court judge shall be submitted to the District Court of Appeal Budget Commission for review and approval.
(ii) The chief judge of a district court of appeal shall submit the report showing the need together with the approval of the District Court of Appeal Budget Commission to the chief justice.
(3) The chief justice and the state courts administrator may then visit the chief judge and other representatives of the court submitting the request as well as representatives of The Florida Bar and the public to gather additional information and clarification about the need in the particular jurisdiction.
(4) The chief justice will submit recommendations to the supreme court, which will thereafter certify to the legislature its findings and recommendations concerning such need.

COURT COMMENTARY
1983 Adoption. Article V, section 9, of the Florida Constitution authorizes the establishment, by rule, of uniform criteria for the determination of the need for additional judges, except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing, or redefining appellate districts and judicial circuits. Each year since the adoption of article V in 1972, this court, pursuant to section 9, has certified its determination of need to the legislature based upon factors and criteria set forth in our certification decisions. This rule is intended to set forth criteria and workload factors previously developed, adopted, and used in this certification process, as summarized and specifically set forth in In re Certificate of Judicial Manpower, 428 So.2d 229 (Fla. 1983); In re Certificate of Judicial Manpower, 396 So.2d 172 (Fla.1981); and In re Certification, 370 So.2d 365 (Fla.1979).
2004 Amendment. Subdivision (b)(2) was amended to provide more specific criteria and workload factors to be used in determining the need for increasing or decreasing the number of judges on the District *1143 Courts of Appeal. In addition, the caseload level at which the court will presume that there is a need for an additional appellate judge has been increased from 250 to 350 filings per judge.
2006 Amendment. Subdivision (a) is amended to be consistent with the 2006 adoption of rule 2.036 relating to the criteria for determining the necessity and for increasing, decreasing, or redefining appellate districts and judicial circuits, pursuant to article V, section 9, Florida Constitution. The Court adopts the Commission on District Court of Appeal Performance and Accountability's conclusion that a single case filing threshold is insufficient to capture the intricacies that make up judicial workload in the district courts. The Commission's alternative to the 350-filings-per-judge threshold is a weighted case dispositions per judge, which the Commission determined to be a meaningful measure of judicial workload.
The relative weighted caseload is determined by surveying a representative sample of judges on the relative degree of judicial effort put into each category of cases based upon an agreed typical case having a value of 100. Each category was assigned a relative weight number based upon the statewide average of the weight calculated through the survey. These weights were then applied to each court's dispositions on the merits to determine the weighted caseload value and divided by 100.
This approach accommodates the important distinction between the number of cases filed and the judicial effort required to dispose of those cases. While the number of cases continues to increase, trends in the types of cases filed have dramatically changed the nature of the work that the district court judges handle. The weighted caseload approach not only accommodates the differences in types of cases by measuring their relative workload demands for judges, but it also accommodates the work performed by legal support staff.
Subdivision (b)(2)(B) establishes a presumption that the relative weight of cases disposed on the merits should fall below 280 per judge. Chief judges must consider the impact that the addition of a judge would have on this measure when applied to their courts' dispositions on the merits for the previous year.
Every four years the Commission will measure the relative judicial effort associated with the cases disposed on the merits for the year immediately preceding. This will be accomplished by asking a representative sample of judges to approximate the relative weight of cases in relation to a mid-ranked case. The resulting weights will then be applied to each court's dispositions on the merits to determine the weighted caseload value per judge.

*1144 APPENDIX 2

DCA Workload Report to the Supreme Court

September 2005

Charge of the Commission
Administrative Order No. AOSC04-21 directs the Commission, "[b]y June 30, 2005 [to] propose a process and criteria for determining the resource needs and deployment patterns sufficient to address the workload of the district courts of appeal, including a re-examination of whether the 350-filings-per-judge threshold accurately reflects a basis for certifying the need for additional district court of appeal judges."
On July 7, 2005, the Chair, Judge Martha Warner, provided a written update to the Chief Justice regarding the Commission's progress. Judge Warner reported that the Commission had concluded that a single number threshold most likely was insufficient to capture the intricacies both of the caseload as well as the other factors that make up judicial workload and indicated that the Commission was seeking to complete a relative case weight study. She stated that the Commission would provide additional information to the court by the end of September and that the re-write of the rule could be accomplished by Spring 2006.

Research Methodology:
The Commission began by reviewing its charge, Florida's current certification rule, the national appellate court performance standards, the mission of the district courts of appeal, and the complimentary charge of the Committee on Appellate Court Workload and Jurisdiction.
*1145 While acknowledging some overlap, the Commission distinguished between those criteria that are relevant to whether the judges on a court are working above optimal capacity and those criteria that would suggest that the need for a jurisdiction change was indicated.
The Commission's initial analysis included a review of the existing certification criteria to identify those that directly correlate to judicial workload and those which did not directly correlate. The Commission found that many of the criteria in rule 2.035 are not good measures or predictors of judicial workload. (See the staff analysis prepared by the Office of the State Courts Administrator).
The Commission set out to identify the factors and trends that facilitated this apparent increased capacity for judicial work. The Commission examined trends to identify: how change in case mix impacts judicial workload; historical trends that impact the ability to reliably forecast filings; the impact of technological advances in legal research, case processing, and document preparation on judicial productivity; and the impact of central staff support on judicial workload.

Findings:
&check; No single factor can adequately establish the need to increase or decrease the number of judges on a court.
&check; Establishing an optimal number of filings-per-judge unrealistically presumes static circumstances.
&check; There is an important distinction between the number of cases filed and the judicial effort required to dispose of those cases. This distinction should be quantified and considered as a more precise measurement of workload than that shown by filing predictions.
&check; Legal conditions, generally the result of legislation, translate into "blips" in filings that hamper the ability to develop reliable filing forecasts
&check; Judicial workload should be examined in light of judicial and support staff resources.
&check; Multiple factors contribute to the workload capacity of judges and an optimal analysis must accommodate trends in case filing, case mix, and staffing ratios.
&check; Judicial workload in any given district court should be examined in relationship to the judicial workload of the other district courts.

Process for Establishing Relative Case Weights
Upon determining that case mix was a relevant factor for judicial workload, the Commission developed a process to measure the judicial effort associated with any given caseload. The Commission first established categories of similar cases and ranked them to *1146 identify a mid-ranked case. Then, representative samples of judges from each court were asked to approximate the relative weight of each case category in relation to the mid-ranked case.
Judges were instructed to assign the relative weights based on a "typical," "average," or "normal" version of each case type. Based on the similarity and consistency of the judges' responses, we were able to statistically determine that this methodology adequately represented judicial perceptions of the proportional relationship between case type categories. These weights were then applied to each court's dispositions on the merits to determine the weighted caseload value. See Appendix A for the average relative weights and explanation of their application; see Appendix B for the instrument and instructions.
Figure 1. Application of Average Relative Weights to Cases Disposed After Submission on the Merits

 FY First Second Third Fourth Fifth
 2000-01 23,135 28,566 24,178 28,003 25,343
 2001-02 25,267 28,571 24,621 29,986 26,484
 2002-03 23,702 31,923 24,149 30,848 26,654
 2003-04 28,365 29,317 22,050 32,005 28,409
 2004-05 28,317 32,456 22,553 31,424 28,387

The relative case weights may be used in several ways. First, they can show how a court's judicial workload has increased or decreased over time. Second, they can allow a comparative assessment of the distribution of judicial workload between the districts. And finally, they can also contribute to an analysis of how the use of other non-judicial resources can affect judicial workload. Notwithstanding the usefulness of the case weight analysis, the Commission does not believe that the case weighted number of dispositions on the merits for any particular district court can provide a single numerical factor for determining the need for additional district court judges.
The Commission notes two issues with the survey results that require further comment. The first is in the area of administrative appeals. The First District weighted their administrative appeals with a substantially greater judicial effort than the other courts. This is because so many complex rule challenges are filed in Tallahassee, which is the headquarters of most state agencies. The relative weights calculated for this report reflect the statewide weight for administrative appeals, resulting in a lower relative case weight than is reflective of the actual workload of the First District. The Commission will continue to study this issue and attempt to isolate that portion of cases in the First District unique to that court, just as workers' *1147 compensation cases are unique to that court. It will then assign a weighted workload measure to those cases commensurate to their greater complexity.
The second issue deals with the Third District and its lack of central staff. Central staff handles the work-up of various categories of cases in the other courts, including writs and post-conviction relief matters. In the Third District, without central staff, these cases appear to demand more judicial effort, which is reflected in the relative weights assigned in the Third District's survey results. Were the Commission to use the Third District's weights for these cases the Third District's relative case weight would be substantially higher. However, the use of the relative weight to compare courts may also tend to show the impact of various case management practices on the judicial workload.

Criteria:
The Commission recommends that workload, efficiency, effectiveness and professionalism criteria be evaluated in determining the need for increasing or decreasing the number of judges. Each of the criteria has objective and subjective components to be evaluated. The Commission has identified specific factors to be considered as part of each issue.
The Commission also recommends a process for reviewing the criteria, which includes a periodic review of the relative case weights established for the various case types and approval of certification requests by the District Court of Appeal Budget Commission.
Following is an outline of the process and the specific criteria for determining the need for increasing or decreasing the number of district court judges. To assist the Court in its consideration, the OSCA has prepared a certification report relative to the proposed criteria.
If the court generally approves of the recommended process and identified criteria, the Commission will submit appropriate amendments to rule 2.035, Florida Rules of Judicial Administration, by March 30, 2006.

*1148 Outline for Amendments to Rule 2.035, Rules of Judicial Administration: District Court of Appeal Judges
Purpose: The purpose of this rule is to establish uniform criteria used by the Supreme Court in determining whether to certify the need for increasing or decreasing the number of judges on a district court of appeal.
Process: The process for examining the uniform criteria in this rule includes:
&check; an annual review of the need for new judges by each district court of appeal, approved by the District Court of Appeal Budget Commission, and a request to the Supreme Court for the certification of additional judges, and
&check; a four year review of the workload trends of the district courts of appeal and consideration of adjustments in the relative case weights by the Commission on District Court of Appeal Performance and Accountability.
Criteria: The criteria for determining the need to certify the need for increasing or decreasing the number of judges on a district court of appeal are:
Workload: The workload factors to be considered for this criteria are:
&check; trends in case filings;
&check; trends in changes in case mix;
&check; trends in the backlog of cases ready for assignment and disposition;
&check; trends in the relative weight of cases disposed on the merits per judge; and
&check; changes in statutes, rules of court, and case law that directly or indirectly impact judicial workload.
Efficiency: The efficiency factors to be considered for this criteria are:
&check; a court's ability to stay current with its caseload, as indicated by measurements such as trend in clearance rate;
&check; trends in a court's percentage of cases disposed within the time standards set forth in the Rules of Judicial Administration and explanation/justification for cases not resolved within the time standards; and
&check; a court's utilization of resources, case management techniques and technologies to maximize the efficient adjudication of cases, research of legal issues, and preparation and distribution of decisions.
Effectiveness: The effectiveness factors to be considered for this criteria are the extent to which each judge has adequate time to:

*1149 &check; thoroughly research legal issues, review briefs and memoranda of law, participate in court conferences on pending cases, hear and dispose of motions, and prepare correspondence, orders, judgments and opinions;
&check; expedite appropriate cases;
&check; prepare written opinions when warranted;
&check; develop, clarify, and maintain consistency in the law within that district, including consistency between written opinions and per curiam affirmances without written opinions;
&check; review all decisions rendered by the court;
&check; perform administrative duties relating to the court; and
&check; participate in the administration of the justice system through work in statewide committees.
Professionalism: The professionalism factors to be considered for this criteria are the extent to which judges report that they have time to:
&check; participate, including teaching, in education programs designed to increase the competency and efficiency of the judiciary and justice system as well as the competency of lawyers;
&check; provide guidance and instruction for the professional development of court support staff; and
&check; participate in appropriate activities of the legal profession at both the state and local levels to improve the relationship between the bench and bar, to enhance lawyer professionalism, and to improve the administration of justice.

*1150 APPENDIX A

Relative Case Weights and Method of Calculation of Relative Weighted Judicial Workload

 Relative
Delphi Case Group Weight[*]
--------------------------------------------------------------
NOA - Civil Final 204
NOA - Workers Compensation 190
NOA - Administrative (Other) 152
NOA - Civil Non Final 140
NOA - Juvenile (TPR) 128
Petitions - Certiorari 115
NOA - Criminal State Appeals 105
NOA - Criminal Judgment and Sentence 100 mid ranked case type
NOA - Juvenile 99
NOA - Criminal Post Conviction Non
Summary 70
NOA - Civil Prisoner Litigation 67
Petitions - All Other 66
NOA - Criminal Habeas Corpus and Other 66
NOA - Criminal Post Conviction Summary 55
NOA - Administrative (Unemployment
Compensation) 51
NOA - Criminal Anders 45

The Relative Weighted Caseload per judge is calculated by multiplying the relative case weight for each Delphi case group times the number of dispositions on the during the fiscal year, totaling all weighted case dispositions for the court, and dividing by the number of judges on the court.
OSCA will use this method for calculating the relative case weight per judge for each court and will include the individual court's calculations in the annual certification report.

*1151 APPENDIX B

*1152 
NOTES
[1] We thank the Commission for its excellent and thoughtful work. The Commission is headed its by hardworking and conscientious Chair, the Honorable Martha C. Warner, Judge, Fourth District Court of Appeal, and consists of the following members: The Honorable William A. Van Nortwick, Judge, First District Court of Appeal; The Honorable Chris W. Altenbernd, Judge, Second District Court of Appeal; The Honorable Melvia B. Green, Judge, Third District Court of Appeal; The Honorable William D. Palmer, Judge, Fifth District Court of Appeal; Mr. Thomas D. Hall, Clerk, Florida Supreme Court; Ms. Mary Cay Blanks, Clerk, Third District Court of Appeal, and Mr. Ty W. Berdeaux, Marshal, Fifth District Court of Appeal.
[2] For a complete discussion of the methodology used by the Commission, see the Commission's September 2005 DCA Workload Report to the Supreme Court, which is attached as Appendix 2 to this opinion. Weighted caseload is based on the state average relative weights of cases disposed of on the merits established in September 2005.
[3] The number established in the rule, 280, does not represent the filings per judge but is a weighted threshold calculated according to the process described in the Commission's 2005 report, which is attached as Appendix 2. Under new rule 2.035(b)(2)(B)(ii), this number will be reexamined every four years.
[4] Subdivision (c), Additional Workload Factors, is amended to clarify that it applies only to trial courts.
[*] Number is the statewide average weight for each case group from the survey responses.