945 So.2d 1155 (2006)
In re CERTIFICATION OF the NEED FOR ADDITIONAL JUDGES.
No. SC06-2267.
Supreme Court of Florida.
December 14, 2006.
LEWIS, C.J.
This opinion fulfills our constitutional obligation to determine the state's need for additional judges in Fiscal Year 2007-08 and to certify our findings and recommendations concerning that need to the Legislature.[1] Certification is "the sole mechanism established by our constitution for a systematic and uniform assessment of this need." In re Certification of Need for Additional Judges, 889 So.2d 734, 735 (Fla.2004).
Having an adequate number of judges available to consider and decide cases in the county, circuit, and district courts is essential to the timely and meaningful fulfillment of the constitutional guarantee of *1156 access to justice for the people of Florida. It is imperative that our courts be open, properly staffed, and operational at all times. An adequate judicial staffing complement is necessary to ensure public safety, protect individual rights and liberties, and safeguard our democracy by maintaining the rule of law.
Using the prescribed objective standards, this Court has examined case filing and disposition data, analyzed various judicial workload indicators, and considered judgeship requests submitted by the lower courts. Further, we have applied the case-weighting methodology for the trial courts that we have utilized in our last six certification opinions submitted to the Legislature. For the second year, we have used newly adopted certification criteria for the district courts. See In re Report of the Comm'n on Dist. Court of Appeal Performance & AccountabilityRule of Judicial Admin. 2.035, 933 So.2d 1136 (Fla.2006).
We note that the funding of new judgeships during the 2005 Legislative Session, Special Session 2005 B, and the 2006 Legislative Session has significantly reduced the judicial need that previously existed. We also recognize that the addition of a total of 114 trial judges in the last two years will significantly affect caseloads and that while we and the chief judges at the local level are assessing that impact, we clearly have not had sufficient time to determine the full extent of the impact. Additionally, we are currently undertaking a complete review of the case weights used in the trial court certification process to determine the influence that changes in law and the additional supplemental resources may have had on the weights to be applied since they were originally developed. The prescribed system of analysis contemplated that this review would occur at this time. While these activities are currently underway and ongoing, to ensure uniformity and fairness in our decisions with regard to judicial certification, we can only continue to use the prescribed system in its current form in the certification of judges for Fiscal Year 2007-2008. It was clear upon adoption of the more objective case weight analysis approach that we would continue this process as the review was conducted because no interim or alternative objective approach was provided for use as the planned review proceeds. We therefore conclude that the judicial need is thirty-seven additional judgeships: two in the district courts of appeal, twenty-two in the circuit courts, and thirteen in the county courts. We highlight and caution that inherent in this certification is the ongoing evaluation of the recent additional resources superimposed upon the contemplated reevaluation of case weight measurements.

TRIAL COURTS
Approximately ninety-nine percent of all court filings in Florida are processed in the circuit and county courts. Trial court judges are on the front lines in dispensing justice; their work is vital to our citizens and businesses, who expect our judicial branch to resolve issues fairly, peaceably, expeditiously, and in a manner that promotes the rule of law. Florida's trial court judges stand as guardians of our constitutional freedoms as they ensure access, protect the vulnerable, keep our courts open and operational, and function with efficiency.
As noted, this Court uses a case-weighting system based on accepted standards of measurement in determining the need for additional trial court judges.[2] The case-weighting *1157 system distinguishes different types of cases and assigns different allocations of time that must be expended on cases of each type, producing a total judicial need for each circuit. Additionally, we adjust for differing jury trial rates in each circuit and county and also consider the number of judges requested by the chief judge in each circuit. The resulting certification is an objective statement of what the trial courts need to meet workload demands.
The current need at the circuit court level is a result of the growth in felony, family court, and probate divisions from Fiscal Year 2000-2001 to Fiscal Year 2004-2005. Drug crimes lead the growth in the felony division with an approximate seventeen percent increase in case filings, while property crimes (including burglary, theft, worthless checks, and other felonies) increased by approximately fifteen percent.
In the family court division, domestic and repeat violence, child support, and dependency case filings experienced nineteen percent, twelve percent, and five percent increases, respectively. Many of these cases involve complex issues affecting the well-being of Florida's children and families. The capacity to expeditiously consider matters and render decisions that are in the best interests of our children and families demands an adequate number of judges. We have also experienced an increase in the probate division (including Baker Act,[3] Marchman Act,[4] and other social cases[5]) of approximately eighteen percent.
An overview demonstrates that county court filings, excluding civil traffic infractions, increased approximately four percent from Fiscal Year 2000-2001 to Fiscal Year 2004-2005. Evictions have led the growth in this area with an approximate twenty-six percent increase in case filings. Case filings for misdemeanors, DUI, and civil matters (involving claims ranging from $5,001 through $15,000) also increased by eleven percent, eight percent, and five percent, respectively. In addition to the increased number of filings, civil cases at the county court level often involve the complications associated with unrepresented litigants who tend to be unfamiliar with statutes, court rules, and court procedures. For many Floridians, county court judges are the face of the Florida justice system. It is essential that all county court cases, including those with unrepresented litigants, receive adequate judicial time and attention.
As we have contemplated, the State Courts System is currently reviewing and updating the original trial court case weights.[6] These new case weights will *1158 take into account changes in law enacted by the Legislature since 2000 as well as the availability of additional supplemental resources (e.g., general magistrates, case managers, and staff attorneys) since 2000, all of which are recognized to impact judicial workload. Of particular interest is the impact of the additional resources provided to the courts in 2004 as part of the implementation of the constitutional amendment on trial court funding commonly referred to as Revision 7.
The initiative to conduct this case weight reevaluation is consistent with the National Center for State Courts' final report on Florida's weighted caseload system, issued in January 2000, which recommended that the weights be evaluated every five years to preserve the integrity of the system.[7] This process will require approximately twelve months for completion and we intend to use any new case weight criteria in our certification analysis for the following year.

TRIAL COURT CERTIFICATION
We recognize the substantial increases in judicial and supplemental resources provided to the trial courts in the last three years and our efforts are underway to analyze the impact of these resources on judicial workload. To be fair and consistent in our treatment of requests for additional trial court judgeships, we certify the need for twenty-two new circuit court judges for Fiscal Year 2007-08, distributed as follows:
1. Six additional circuit court judges for the Fifth Judicial Circuit;
2. Three additional circuit court judges for the Seventh Judicial Circuit;
3. Two additional circuit court judges for the Fourth Judicial Circuit; and
4. One additional circuit court judge each for the Second, Sixth, Eighth, Ninth, Tenth, Thirteenth, Fourteenth, Fifteenth, Eighteenth, Nineteenth, and Twentieth judicial circuits.
Further, we certify the need for thirteen new county court judges for Fiscal Year 2007-08, distributed as follows:
1. Four additional county court judges for Hillsborough County;
2. Two additional county court judges each for Duval and Palm Beach counties; and
3. One additional county court judge each for Brevard, Marion, Miami-Dade, Orange, and Pinellas counties.
We have specifically reviewed the requests from chief judges to certify one circuit court judge in both the Eleventh and Twelfth judicial circuits as well as one county court judge each in Columbia and Broward counties. However, we note that the net judicial need is less than *1159 one-half for each of the judgeships requested.[8] We have determined that in the absence of special circumstances, we cannot certify the need for positions to satisfy these requests. We emphasize that in addition to the mathematical calculations, our staff performs extensive analysis of each request to assess the availability of supplemental resources and any special circumstances justifying an exception. In accordance with our uniform procedures, we decline to certify the remaining requests.

DISTRICT COURTS OF APPEAL
In July 2006, this Court issued an opinion, In re Report of the Commission on District Court of Appeal Performance & AccountabilityRule of Judicial Administration 2.035, 933 So.2d 1136 (Fla.2006), in which we adopted new criteria for the certification of need for district court of appeal judges. This rule reflects two years of study and recommendations by the Commission on District Court of Appeal Performance and Accountability. The key provisions of the rule include the use of a relative weighted caseload system with a threshold. In addition, any requests for a new district court judgeship must be approved by the District Court of Appeal Budget Commission. Under the new weighted caseload per judge threshold established in Rule of Judicial Administration 2.240(b)(2)(B),[9] "[t]he court will presume that there is a need for an additional appellate court judgeship in any district for which a request is made and where the relative weight of the cases disposed on the merits per judge would have exceeded 280 after the addition of the proposed judge(s)."[10]
Our analysis indicates that the Second and Fourth districts have the highest weighted caseload per judge. Further, the weighted dispositions are highest in the Second District and would support a request for two additional judges. However, the chief judge of the Second District indicates that use of central staff attorneys and case management techniques for processing postconviction cases has resulted in efficient case disposition that has allowed that court to limit the request to one additional judge. The Fourth District's weighted caseload per judge is only exceeded by the Second District. The Fourth District has been managing its caseload through improved efficiencies and innovation, including the use of information technology, senior judges, case management techniques, and central staff. However, the Fourth District has demonstrated that it attained the point where judicial standards will be adversely affected if a new judgeship is not forthcoming.

DISTRICT COURT CERTIFICATION
Although we have adopted new criteria for district court of appeal certification, we are also actively monitoring caseload trends in the district courts to afford a better foundation to assess how application of these criteria may influence judicial *1160 workload. In this current application, we consider that the Second District last received an additional judge in 1993 and that the most recent addition of a judgeship in the Fourth District was in 1988. Statewide, the district courts of appeal recorded an average of approximately 404 case filings per judge in Fiscal Year 2005-06. For the same time period, the Second and Fourth Districts experienced approximately 428 and 410 case filings per judge, respectively. Of even greater significance are the increases in the weighted-caseload-per-judge data. The Second and Fourth Districts have the highest weighted caseloads per judge. We once again certify the need for one additional district court judge each in the Second and Fourth Districts, for a total of two new district court judgeships.

CONCLUSION
Florida's judiciary continues to be among the finest in the country. Our judges ensure that our courts are open, operational, effective, efficient, and accessible to all. We continue to be confronted with multiple challenges in providing access, such as identifying and eliminating physical barriers to our courthouses, providing meaningful justice for individuals with mental illness, and institutionalizing appropriate methods for the effective and efficient administration of complex litigation cases. Our judicial leaders are committed to addressing these issues.
The Legislature has responded to our requests for new judgeships during the last two fiscal years by funding 114 trial court judges. These judgeships have significantly reduced the judicial need that has existed for many years. We encourage the Legislature to authorize the judgeships identified in this opinion as they are directed to courts having sustained growth in judicial workload and unsatisfied needs.
It is so ordered.
WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Article V, section 9 of the Florida Constitution provides in pertinent part:

Determination of number of judges.The supreme court shall establish by rule uniform criteria for the determination of the need for additional judges except supreme court justices, the necessity for decreasing the number of judges and for increasing, decreasing or redefining appellate districts and judicial circuits. If the supreme court finds that a need exists for increasing or decreasing the number of judges or increasing, decreasing or redefining appellate districts and judicial circuits, it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.
[2] This system was developed in response to the proviso language of the 1998 General Appropriations Act, in which the Legislature directed that the judicial branch employ a certification methodology that relies on case weights and calculations of available judge time to determine the need for additional trial court judges. See ch. 98-422, § 7, at 3963, Laws of Fla. Pursuant to this direction, the judicial branch undertook an extensive project to design and implement a weighted caseload system, assisted by the National Center for State Courts and endorsed by the Office of Program Policy Analysis and Government Accountability.
[3] See ch. 394, Fla. Stat. (2004).
[4] See ch. 397, Fla. Stat. (2004).
[5] The term "other social cases" includes cases that are filed in the probate division but are not captured in any of the other discrete probate categories. Cases in this category usually involve involuntary commitment unrelated to the Baker or Marchman Acts. Examples include tuberculosis cases, developmental disability cases, incapacity determinations, and actions related to the Adult Protective Services Act.
[6] A Judicial Resource Workgroup consisting of judges, trial court administrators, and general magistrates has been formed to oversee the updating of the case weights. Web-based case related forms were developed and implemented for judges to use in updating the case weights. The Office of the State Courts Administrator has conducted training in sixty locations throughout Florida. The data developed by judges are currently being compiled and analyzed by the Office of the State Courts Administrator. A representative group of sixty-five trial court judges will convene in early 2007 to critically review and validate the new case weights. The revised case weights will then be sent to the Court for consideration.
[7] The report states:

Recommendation 2: The OSCA should plan to conduct a systematic update of the case weights approximately every five years, depending on the judgment of the Court Statistics and Workload Committee. Funding for this should be part of the regular legislative agenda related to the process of certification of the need for new judgeships.
Brian J. Ostrom et al., Florida Delphi-Based Weighted Caseload Project Final Report 77 (2000), available at http://www.floridasupremecourt.org/pubinfo/highprofile/DelphiFullReport.pdf.
[8] Total judicial need is the total number of judges required to complete all expected workload. Net judicial need is the difference between the total judicial need and the number of existing judges.
[9] Effective September 21, 2006, the Rules of Judicial Administration were reorganized and renumbered in In re Amendments to the Florida Rules of Judicial AdministrationReorganization of the Rules, 939 So.2d 966 (Fla.2006). Accordingly, former rule 2.035 is now rule 2.240.
[10] The number established in the rule, 280, does not represent the filings per judge but is a weighted threshold calculated according to the process described in the 2005 report of the Commission on District Court of Appeal Performance and Accountability.